UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60117-CR-LEIBOWITZ

UNITED STATES OF AMERICA,

    Plaintiff,
v.

SANJAY SINGH,

    Defendant.
_____/

**THE DEFENDANT'S CORRECTED[1] RESPONSE TO THE GOVERNMENT'S NOTICE TO RELY ON RECORDS CUSTODIAN AND SCOPE OF EXPECTED TESTIMONY**

The Defendant, Sanjay Singh, by and through undersigned counsel, hereby files this response to the government's notice of intent to rely on records custodian and scope of receivers and their forensic accountant's testimony [ECF No. 203]. In the Notice, the government identifies three issues regarding the future testimony of Paul Lopez and Soneet Kapila: (1) whether Mr. Lopez can serve as a records' custodian for RBL; (2) the scope of Mr. Lopez's expected testimony; and (3) the scope of Mr. Kapila's expected testimony. Mr. Singh addresses each in turn:

**I.    Whether Paul Lopez May Serve as Records Custodian for RBL**

Mr. Singh does not dispute that Mr. Lopez may serve as a records custodian for Royal Bengal Logistics, given his position as the new manager of the company. *See* Def.'s Mot. in Limine [ECF No. 140] at 5 (noting that "it is well-established that

---

[1] Mr. Singh files this corrected response to correct an error in the caption of the case and a typographical error in a citation to a docket entry on page 8.

a receiver may serve as a custodian of records for the underlying business and introduce those business records into evidence"). In order to do so, however, the receiver must have knowledge of the underlying recordkeeping procedures. *See id.* (citing *In re Intern. Mgmt. Assoc., LLC*, 781 F.3d 1262, 1267–69 (11th Cir. 2015)).

In its Notice, the government helpfully lists eight categories of documents it will seek to introduce through Mr. Lopez. Mr. Singh agrees with the Court that, out of respect for the jury's time, questioning regarding the receiver's knowledge of the recordkeeping procedures for these documents should occur outside the presence of the jury. Limited voir dire regarding: (1) how the receiver knows the documents are authentic; (2) how the receiver learned of how the documents were kept; and (3) how the documents were found at RBL, is required to show the admissibility of the government's proposed exhibits.

The defense does not dispute that, as the new manager of RBL, Mr. Lopez may serve as a records custodian.[2] But given the number of documents the government seeks to introduce through Mr. Lopez, and the commensurate length of the foundational questions necessary for their introduction, the defense agrees that some limited voir dire should be conducted of Mr. Lopez outside the presence of the jury.

**II. Whether Mr. Lopez may Provide Testimony Regarding Pre-Receivership Matters**

---

[2] The defense reached out to the government on October 20, 2024, regarding proposed stipulations for exhibits on the government's and defense's exhibit lists in regards to Mr. Lopez, and believes that the parties will be able to substantially narrow the scope of the documents to which Mr. Singh has authentication- or business-records-related objections at the Monday, October 21, 2024, hearing.

The defense does not dispute that Mr. Lopez may testify as to any matter on which he has firsthand knowledge. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that a witness has *personal knowledge* of the matter." (emphasis added)). In its Notice, the government helpfully details which matters Mr. Lopez does have *firsthand* knowledge of, and distinguishes those matters from those which he has only *secondhand* knowledge of:

> From the moment of their appointment until approximately the end of November 2023, either Mr. Paul Lopez or his joint receiver spent multiple daily business hours (every day, for some weeks) physically at Royal Bengal during that time, and each together and/or separately met with every employee at Royal Bengal, learned of all business practices directly from each employee, absorbing through those many weeks and months the personal knowledge required to qualify as actual records custodians of RBL's records kept in the ordinary course of RBL's enterprise. The Receivers also met and interviewed all relevant RBL staff at the RBL Lubbock facility, learning all necessary facets of the RBL divisions in Coral Springs and Lubbock, business practices and the recordkeeping methods from *employees with direct and personal knowledge.*

Notice [ECF No. 203] at 1–2 (emphasis added). As this quotation makes clear, the government understands full well that the employees who the receivers interviewed have "direct and personal knowledge" of the "business practices and [] recordkeeping methods," while the receivers only "learned of all business practices [] from each employee," and thus have only secondhand knowledge. *Id*. And because Mr. Singh and each of his alleged co-conspirators were removed from their positions on June 21, 2023, the statements RBL employees made after that date are *not* admissible as either: (1) co-conspirator statements; (2) statements of an employee; or (3) statements of an agent. Though, of course, this is not to say that the statements may not be

3

admitted for some non-hearsay purpose such as, for example, the effect on the listener (provided all other evidentiary hurdles are satisfied, *see, e.g.*, Fed. R. Evid. 403).

Mr. Singh agrees with the Court that some limited voir dire of Mr. Lopez is necessary to determine whether his expected testimony will fall within the bounds of what this Court has already ordered. *See* Oct. 1, 2024 Tr. [ECF No. 153] ("A new manager is going to take the stand is going to testify about basically from June of 2023, when they start to get their arms around the books and records of his company, in the broadest sense, they start to look backwards."). As all parties agree, Mr. Lopez is not entitled, merely by virtue of his title, to testify as to matters for which he lacks personal knowledge.

### III. Whether Mr. Kapila may "Describe how RBL Became a Ponzi"

The government's position regarding the expected testimony of Mr. Kapila, on the other hand, flies in the face of prior representations the government made to this Court and is firmly at odds with the rules of evidence. As this Court has stated repeatedly, Mr. Kapila is *not* permitted to testify that RBL business operations were consistent with a Ponzi scheme. *See* Oct. 1, 2024 Tr. [ECF No. 153] 20:2–5 ("To be clear – let me stop you, sir. There's going to be no 'consistent with.' That is the – that is the ken of an expert. They are allowed, and I've said this repeatedly, to say the phrase 'Ponzi Scheme.'"). This *new* requested testimony regarding a description of *how* RBL became a supposed "Ponzi scheme" goes far beyond even that. That the government has taken this Court's pellucid ruling to mean that Mr. Kapila may testify not only that RBL *was* in fact operating consistently with a Ponzi scheme, but

4

that he can take the *additional step* of describing *how* RBL became a Ponzi scheme, strains credulity.

Recall that as early as July 24, 2024, this Court made clear to the government that Mr. Kapila was *not* permitted to testify that RBL was operating as a Ponzi scheme, because that testimony was plainly expert testimony:

> THE COURT: I think what Mr. Cruz is saying is, is it is a specific strategic choice of the government that this witness or these witnesses will not be experts, which means, as everyone well knows, there will be no opinion testimony in this case. There will be no testimony of this is consistent with what a Ponzi scheme looks like.
> What they will be able to do is they will be able to say I looked at the underlying records, I looked at the moneys in, I looked at the moneys out, this is what they show, at this date they had this much money, on this date they had that much money.
> Am I reading you right, Mr. Cruz? There's no opinion in this case then.
> MR. CRUZ: As usual, Judge, there's a gray area, and I want to be careful because earlier I took it to mean that you didn't feel that saying that this looked like a Ponzi was expert testimony because we were talking about summary witnesses. But if you feel that that treads into the expert witness territory, then I will then consider with my trial part –
> THE COURT: That's right. You should consider the precise scope of what you want that witness to say. Because if they go into opinion – and I understand there's a line. But Ms. Becker is right to rise. If they go into opinion for even one question, they get disclosures as an expert
> …
> MR. CRUZ: Got it, Judge. I understand. Very clear. We'll consult. If it's even close, we'll notice him[.]

July 24, 2024 Tr. [ECF No. 143] 51:15–53:5. And this same discussion occurred at the parties' final pre-trial conference as well. *See* Oct. 1, 2024 Tr. [ECF No. 153] 20:2–5 ("To be clear – let me stop you, sir. There's going to be no 'consistent with.' That is the – that is the ken of an expert.").

As a summary witness, there are a great many things Mr. Kapila is permitted to testify to. He is permitted to testify as to the monies in and the monies out. He is permitted to testify that a certain amount was transferred over a certain period of time to a certain account. He is permitted to testify as to the total amount in any bank account at any time. He may testify to the delta between different transfers. And he may testify that X number of transfers were effectuated between RBL or Mr. Singh and person Y. But he may not provide expert testimony. He may not provide a valuation of RBL's trucking business. He may not testify that RBL was or was not a viable going concern. And he certainly may not testify that RBL was operating as a Ponzi scheme, or (as the government now seeks to elicit) how RBL "became" a Ponzi scheme.

This Court's ruling on the line between appropriate summary witness testimony and expert testimony was perfectly in line with this Circuit's binding caselaw on the subject. *See United States v. Hamaker*, 455 F.3d 1316 (11th Cir. 2006). In *Hamaker*, the government called as a lay witness a financial analyst to testify "at length concerning [the defendant's] financial and business records." *Id.* at 1330. The defendant argued that the expected testimony would be expert testimony, due to the analyst's years of experience in the profession. The Court held a hearing outside the presence of the jury, during which the defense was permitted to *voir dire* the financial analyst on his reliance materials and ultimate conclusions. *See id.* at n.15. During that *voir dire*, the analyst stated that "I can't say that what I have learned over the twenty-four years would be necessary to add and subtract . . . if you are simply looking at a stack of time sheets . . . you simply flip a page and hit the adding machine." *Id.*

6

And in ruling that the analyst could testify as a lay witness, the Court noted that he "simply added and subtracted numbers from a long catalogue of MCC records, and then compared those numbers in a straightforward fashion. . . . *[the] review itself was within the capacity of any reasonable lay person.*" See *id.* at 1331–32 (emphasis added).

The Eleventh Circuit's ruling in *Hamaker* thus mirrored this Court's ruling here. Mr. Kapila may testify as a summary witness and, in so doing, summarize the bank records which he reviewed. He may add and subtract, but he may not draw expert conclusions from those records regarding RBL's viability as a going concern, what RBL's business valuation was, or whether RBL operated as a Ponzi scheme.

The cases the government cites are not to the contrary.³ *See United States v. Jayyousi,* 657 F.3d 1085, 1102 (11th Cir. 2011) (case agent who investigated case for five years permitted to testify as lay witness regarding how he interpreted the words he heard on wiretaps); *United States v. Estrada*, 969 F.3d 1245 (11th Cir. 2020) (lay witnesses permitted to detail their employer's "policies and practices" regarding processing of visas).

*United States v. Beverley*, 775 F. App'x 468, 471 (11th Cir. 2019) is perhaps the best example. There the government called an IRS Special Agent as a summary witness. *Id.* That agent "created flowcharts that showed how some of the funds were used [and] presented summary charts he had made for each bank account at issue.

---

³ The government also cites other cases, but these do not even discuss the distinction between lay and expert opinion testimony. *See United States v. Annamalai*, 939 F.3d 1216 (11th Cir. 2019); *United States v. Silvestri*, 409 F.3d 1311 (11th Cir. 2005); *United States v. Bennett*, 874 F.3d 236 (5th Cir. 2017); *United States v. McDonnel*, 550 F.2d 1010 (5th Cir. 1977).

7

He also received [] tax returns and discussed [the defendant's] net operating loss carryovers and his calculations of unreported income." *Id.* In this way, *Beverley* involved the hornbook use of a summary witness. The witness distilled a number of voluminous financial records into "summary charts" and "flow charts" that depicted the flow of money from one account to another, and was asked to compare numbers from one document to those in another in a straightforward fashion. But the witness was not permitted to state any expert opinion, and certainly was not able to testify that the business at issue was a Ponzi scheme.

Indeed, it is telling that the government fails to identify a *single case* in which a lay witness was permitted to testify that, in his opinion, a business was operating as a Ponzi scheme or was not a viable going concern. These opinions are simply beyond the ken of an average lay person, and necessarily require expertise in the subject matter. It is qualitatively different than the case agent in *Jayyousi* testifying as to how he understood certain words, or the government witnesses in *Estrada* testifying as to their employer's policies and procedures.

It is for this reason that this Court has ruled—consistently since the July 24th hearing—that Mr. Kapila would not be permitted to testify that RBL operations were "consistent with" a Ponzi scheme. And it is for that same reason that this Court has ruled that Mr. Kapila would not be permitted to testify that RBL was or was not operating as a viable going concern. *See* [ECF No. 161], Oct. 1, 2024 Tr. at 20:17–21:2 ("MR. VAN DYKE: A going concern analysis is an analysis where you project revenue forward. You say, this is what I expect would be coming in. It's a comparison to the liabilities that are coming in, and you're saying the business cannot continue

8

operating. That's obviously opinion testimony. That's not 'this number in the account is smaller than this number.' This goes far beyond that. THE COURT: . . . [Y]our point is well taken if it is read that way.").

One additional point bears noting. Federal Rule of Evidence 1006 makes clear that a party "may use a summary, chart, or calculation to prove the content of *voluminous writings, recordings, or photographs* that cannot be conveniently examined in court." (emphasis added). There is no question that the bank records at issue here are so voluminous in size that the use of summary exhibits is appropriate. But the use of a summary exhibit is not some backdoor mechanism through which *other* information can be smuggled. As this Court noted at the October 1, 2024, hearing, if Mr. Kapila has, in the course of his preparation, been shown emails regarding RBL activity, inferences of criminal intent drawn from those emails may not be included on his summary exhibits, and must instead be argued by counsel in closing. *See id.* at 30:4–18 ("MR. VAN DYKE: But if they're prepping him for trial, if they're showing him emails, at that point it becomes [] after the fact. He didn't experience that email in his five senses. Not even in his capacity as a hired – a hired gun for the receivers. THE COURT: Yeah, I think you're making a different point there, and the Government's going to have to be careful in a lot of that. That's a good example as I hear you, Mr. Van Dyke, but that might be left for argument. There is a difference between bank records, financial flows . . . and emails which are criminal in nature that are offering inferences of criminal intent, to ask a summary witness to characterize those, that sounds to me like something left for argument and not a summary witness who is aggregated things like bank records and financial records.").

Some limited voir dire regarding Mr. Kapila's reliance materials should also therefore be permitted.

Accordingly, the defense agrees with the Court and the Eleventh Circuit's decision in *Hamaker* that the proper course is to hold a hearing outside the presence of the jury during which Mr. Kapila is questioned regarding his: (1) reliance materials; and (2) any ultimate opinions or conclusions he intends to offer regarding his view of those materials.

                                      Respectfully submitted,

                                      MICHAEL CARUSO
                                      FEDERAL PUBLIC DEFENDER

By: */s/ Victor Van Dyke*
      Victor Van Dyke
      Assistant Federal Public Defender
      Florida Special A No.: A5503021
      150 W. Flagler Street, Suite 1700
      Miami, Florida 33130-1556
      Tel: (305) 530-7000
      E-mail: victor_vandyke@fd.org

By: */s/ Abigail Becker*
      Abigail Becker
      Assistant Federal Public Defender
      Florida Bar No.: 72284
      150 W. Flagler Street, Suite 1700
      Miami, Florida 33130
      Tel: (305) 530-7000
      E-mail: abigail_becker@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **October 21, 2024**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Abigail Becker*